IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NANCY L. BOROWSKI** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 12-6742 |
| | : | |
| **PREMIER ORTHOPAEDIC &** | : | |
| **SPORTS MEDICINE ASSOCIATION, LTD** | : | |
| **Defendant.** | : | |
| | : | |

**Goldberg, J.**                                                                                                                           **July 24, 2014**

## MEMORANDUM OPINION

### I.     INTRODUCTION

Plaintiff Nancy Borowski has sued her former employer, Defendant Premier Orthopaedic & Sports Medicine Association, LTD., for retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000 et seq., and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 et seq. Plaintiff alleges that she was sexually harassed by a physician employed by Defendant, and that after complaining to the company's CEO and later her direct supervisor about the incident, she was fired. Defendant now moves for summary judgment. For the reasons discussed below, we will grant the motion.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed unless otherwise indicated:

### a.  Plaintiff's Employment

According to the complaint, Plaintiff's employment with Defendant began on July 10, 2006, when she was hired as a surgical scheduler in Defendant's Glen Mills, Pennsylvania, office. (Compl. ¶ 19.) Beginning in late 2009 until her termination on October 26, 2011,

1

Plaintiff worked under the direction of Defendant's clinical manager, Linda Kelly, B.S.N., R.N. (Def.'s Stat. of Facts ¶ 2.)  Dr. Charles Hummer, III, M.D., an orthopaedic surgeon, rotated his medical practice through Defendant's various offices, working in the Glenn Mills office several days per week.  Michael Enriquez, who was Defendant's Chief Executive Officer, also visited the Glen Mills office several times per week. (Def.'s Stat. of Facts ¶¶ 3-4; Pl.'s Dep. 18:12-19:9, 24:22-25:8.)

### b. The Incident

Sometime in October of 2010, Plaintiff went into Hummer and Enriquez's office, where they were having a conversation while working at their desks.  Upon ending their conversation, Hummer allegedly turned to Plaintiff and told her to "go ahead and give Mike a kiss," after which the room went quiet.  Plaintiff did not respond and left to go home as it was the end of the work day.  (Def.'s Stat. of Facts ¶¶ 5-7.)  Plaintiff testified that Hummer's statement was "out of character," and that he had never made similar comments in the past.  (Def.'s Stat. of Facts ¶ 8; Pl.'s Dep. Pl.'s 33:9-33:16.)  Even though she believed she had been sexually harassed, Plaintiff did not report the incident or make a complaint at that time.  (Def.'s Stat. of Facts ¶ 9.)

Following the incident, Plaintiff alleges that both Hummer and Enriquez treated her differently, no longer engaging in "chitchat" or saying "hello, how are you doing" and stopping the "small talk" with her as they had previously done.  Plaintiff acknowledges that both continued to speak to her about work-related issues.  In January 2011, Plaintiff confronted Enriquez, telling him that she "wanted the situation to stop."  When Enriquez asked what exactly she was talking about, Plaintiff responded that neither Enriquez nor Hummer engaged her in conversation at work, and that they had not done so since the previous October.  (Def.'s Stat. of Facts ¶¶ 11-13; Pl.'s Dep. 101:3-19.)

### c. Plaintiff's Disciplinary Record

Plaintiff's responsibilities as a surgical scheduler included obtaining the requisite paperwork such as pre-certifications and signed consent forms for surgical procedures. On October 25, 2010, Kelly issued Plaintiff a written "Employee Warning Notice" after Plaintiff put the wrong patient's name on a consent form. Kelly discussed this same notice with Plaintiff at her annual performance review in November 2010. At this review, Plaintiff received an overall performance rating of "below expectations." (Def.'s Stat. of Facts ¶¶ 14, 17; Pl.'s Dep. Exs. 1, 4.) Plaintiff received an oral warning from Kelly in September of 2011 due to recording the wrong code in the billing system for a surgical procedure, which Kelly documented on September 1, 2011. Also documented on the same form was an oral warning that Plaintiff received from Kelly due to a complaint from Crozer Chester Hospital operating room schedulers about their interactions with Plaintiff. Plaintiff does not recall receiving this warning. (Def.'s Stat. of Facts ¶ 18; Pl.'s Dep. 46:4-49:4; Ex. 2.) The following month, on October 14, 2011, Plaintiff received a second written "Employee Warning Notice" due to placing the wrong procedure on a patient's signed consent form. (Def.'s Stat. of Facts ¶ 19; Pl.'s Dep. Ex. 3.)

### d. Investigation, Reorganization and Termination

On October 12, 2011, Defendant held a reorganizational meeting. According to Defendant, it was experiencing financial problems, which necessitated reducing its expenses by laying off a number of employees. (Def.'s Stat. of Facts ¶ 25.) The minutes from the meeting, which Defendant's human resources representative subsequently typed and emailed to each participant, reflect that four employees would be laid off on October 26, 2011. "Nancy" was named as one of the employees due to be laid off. (Geraci Dep. Ex. 8.)

On October 18, 2011, four days after receiving her second written disciplinary warning, and approximately one year after the occurrence, Plaintiff reported the "kissing" incident to Kelly. (Pl.'s Dep. 34:21-35:4.) Plaintiff testified that she approached Kelly at this time because she had received a disciplinary notice and was told by a coworker that "they're trying to get rid of you." (Pl.'s Dep. 38:4-14.) Defendants have submitted a sworn affidavit from Kelly. In her affidavit, Kelly states that she interviewed Plaintiff about this incident in more detail on October 19, 2011 and obtained a signed statement from her on October 20, 2011. Kelly also interviewed and obtained statements from Enriquez and Hummer. Ultimately, Kelly concluded that she was unable to substantiate Plaintiff's complaint as both Enriquez and Hummer denied that the incident ever happened. Kelly provided all three parties copies of the company's anti-discrimination and harassment policy. (Def. Stat. of Facts ¶¶ 31-32; Kelly Aff. ¶¶ 16-18.)

On October 26, 2011, in accordance with the plan formulated at the reorganizational meeting, Plaintiff was advised that her employment was being terminated for financial reasons. Defendant states that the other three employees named at the October 12, 2011 meeting were also terminated that same day. (Def.'s Stat. of Facts ¶ 33.)

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving

party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1)(A).

## IV. DISCUSSION

### a. Prima Facie Retaliation

Title VII prohibits an employer from "discriminat[ing] against any of his employees… because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).[1] To establish a prima facie case of retaliation, a plaintiff must produce evidence that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006) (internal quotation marks omitted).

Under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), once a plaintiff has established a prima facie case of retaliation, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct. If it can do so, the plaintiff must then show that the stated reason is false and that the real reason for the employer's conduct was retaliation. Moore, 461 F.3d at 342. To survive a motion for summary judgment, a plaintiff must produce some evidence, either direct or circumstantial, from which a jury could reasonably disbelieve the employer's stated reason and believe that retaliation was more likely than not a motivating or determinative factor. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

### b. Protected Activity

Defendant contends that Plaintiff did not engage in activity protected by Title VII when she complained to either Enriquez or Kelly. First, Defendant argues that Plaintiff could not have reasonably believed that Hummer's conduct violated Title VII. Second, Defendant argues that because Plaintiff complained to Enriquez about the changes in her social interactions with

---

[1] The elements and allocation of burdens of proof for retaliation claims under the PHRA and Title VII are identical. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). Accordingly, our analysis applies equally to both claims.

Hummer, but did not mention the underlying "kissing" incident, that complaint was not protected activity.

To establish that she engaged in protected activity, a plaintiff need not show that she complained about conduct that is actually prohibited by Title VII, but rather that she had an objectively reasonable and good faith belief that the conduct she opposed was prohibited. Moore, 461 F.3d at 341.  Defendant argues that Plaintiff could not have reasonably believed that Hummer's single, isolated comment to "go ahead and kiss Mike" was sufficiently severe and pervasive to constitute unlawful conduct under Title VII.  Plaintiff responds that the comment was quid pro quo sexual harassment, which can be established by showing that an employee's response to unwelcome sexual advances was used as a basis for a decision about compensation, terms, conditions or privileges of employment.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

It is true that courts grant summary judgment in favor of employers on the grounds that the conduct opposed could not reasonably be perceived as unlawful.  See, e.g., Clark County v. Breeden, 532 U.S. 268, 271 (2001) (granting summary judgment where no reasonable person could believe that a single sexually explicit comment and coworker's response was unlawful); Moyer v. Kaplan Higher Educ. Corp., 413 F. Supp. 2d 522, 527 (E.D. Pa. 2006) (granting summary judgment where no reasonable person could believe that two sexually explicit comments over a fifteen month period were unlawful).  We decline to do so here on this basis.

Importantly, Hummer was not only Plaintiff's coworker, but also Defendant's president, presumably possessed of authority over the terms and conditions of Plaintiff's employment. While the single comment at issue would not meet the severe and pervasive standard for establishing a hostile work environment, it could be construed, in connection with the alleged

change in the way Plaintiff was treated, as a quid pro quo. Without expressing any opinion on whether the incident did indeed rise to the level of actionable conduct under Title VII, we do not find Plaintiff's belief that the conduct was unlawful to be unreasonable as a matter of law. Accordingly, Plaintiff's complaint to Kelly, which expressly raised the incident with Hummer, was protected activity.

Regarding Plaintiff's January 2011 conversation with Enriquez, Defendant argues that Plaintiff complained only that Hummer no longer made social conversation with her, without mentioning the underlying incident, and therefore her complaint was not protected activity. Plaintiff testified as follows:

> A:  …I went into the office, asked if I could speak with him, went in, I told him I wanted the situation to stop and he said what exactly are you, you know, what are you talking about. And I told him that, that he no longer speaks to me. Dr. Hummer no longer speaks to me. And he said I can't speak for Dr. Hummer but he said – but I can tell you you shouldn't work where you don't feel comfortable. He said when and I don't know – he said, well, when did this all start – let me think. I don't know when this began. I said I do, it was October of 2010. He said well, you shouldn't work where you don't feel comfortable.
>
> Q:  Did you tell him that you didn't feel comfortable?
>
> A:  I did. No, I never came right out and said. I said I want this to stop. You're not speaking to me, Dr. Hummer is not speaking to me….

(Pl.'s Dep. 101:3-19.)

"Not every complaint or report entitles its author to protection from retaliation under Title VII." Davis v. City of Newark, 417 F. App'x 201, 202 (3d Cir. 2001) (per curiam). General complaints about unfair treatment are not considered protected activity. Id. at 203; See also Burlington Northern. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (Title VII is not

intended to set forth a "general civility code for the American workplace"). Rather, only complaints about discrimination prohibited by Title VII suffice. Davis, 417 F. App'x at 203. A complaint need not take the form of a formal charge, but must identify the discriminatory conduct, either directly or by context. Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 135 (3d Cir. 2006).

A complaint that is either too vague or related to issues other than discrimination is an insufficient basis for a prima facie case of retaliation. See, e.g., Eldridge v. Municipality of Norristown, 514 F. App'x 187, 189 (3d Cir. 2013) (per curiam) (employee raising concerns about legality of certain questions asked in an interview and a background check conducted on another employee was not protected activity); Davis, 417 F. App'x at 203 (employee's complaints about violations of departmental regulations and being called a "pain" were not protected activity); Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995) (letter expressing feeling that a job was given to a "less qualified individual" was not protected activity in an age discrimination case). According to her own testimony, Plaintiff complained to Enriquez only that he and Hummer no longer spoke to her, without making any mention of the incident that had occurred some months prior. Absent any reference by Plaintiff to discriminatory conduct, her complaint to Enriquez cannot reasonably be considered protected activity under Title VII.

**c. Causal Connection Between Protected Activity and Adverse Action**

The third step to establishing a prima facie case of retaliation requires a plaintiff to show a causal connection between the protected activity and the adverse employment action. In this case, the adverse action is Plaintiff's termination on October 26, 2011. In her complaint, Plaintiff alleged that her complaint to Kelly triggered the retaliatory termination. In her response to the present motion, however, Plaintiff argues only that her complaint to Enriquez, which we

have determined was not protected activity, was the cause. (Pl.'s Resp. 10.) Even if we consider the complaint to Kelly as the cause of the retaliation as pleaded in the complaint, there is no evidence of record regarding a causal connection between the two events.

An employer's knowledge of the protected activity is essential to proving causality. Warfield v. SEPTA, 460 F. App'x 127, 132 (3d Cir. 2012). Moreover, employers are not obligated to suspend previously planned or contemplated employment action upon receiving a discrimination complaint, and proceeding along the lines planned is not evidence of causality. Clark County. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001); Windfelder v. May Department Stores Co., 93 F. App'x 351, 355 (3d Cir. 2004). Here, Defendant held a reorganizational meeting on October 12, 2011 to address its financial problems. The minutes from that meeting indicate that Defendant planned to lay off four employees, including Plaintiff, on October 26, 2011. Plaintiff made her complaint to Kelly on October 18, 2011. Defendant went forward with the layoffs as planned on October 26, 2011, notifying Plaintiff and providing her with a letter detailing the terms of her termination. Plaintiff points to no evidence of record controverting the documentary and testimonial evidence that her termination was planned before she lodged her complaint. On the contrary, Plaintiff testified that she complained after she leaned that she might be fired. Accordingly, she cannot sufficiently demonstrate a causal connection between her complaint and the adverse action.[2]

---

[2] Even if we treat Plaintiff's complaint to Enriquez as protected activity, we find that she has not established a causal connection between it and any adverse action. Roughly ten months passed between the complaint and Plaintiff's termination. Absent additional evidence, this is not particularly suggestive of retaliation. Van Houten v. Principi, 106 F. App'x 134, 138 (3d Cir. 2004) (protected activity and adverse action separated by eight months is not unusually suggestive). The only other evidence of retaliation that Plaintiff proffers consists of two disciplinary notices, which she alleges are "essentially bogus." (Pl.'s Resp. 11.) The notices, described in further detail above, were issued in September and October of 2011. Plaintiff does not deny that she engaged in the conduct the notices describe, although she has no recollection of

### d. Legitimate, Non-Retaliatory Motive and Pretext

Once a plaintiff has established a <u>prima</u> <u>facie</u> case of retaliation, the burden shifts to the employer to put forth a legitimate, non-retaliatory motive for its actions. At this stage, the employer's burden is "relatively light," requiring it to produce evidence that, if true, permits the conclusion that there was a non-retaliatory reason for the adverse action. <u>Fuentes</u>, 32 F.3d at 763. If it can do so, the plaintiff must then produce evidence that the proffered reason was pretextual, and that the adverse action was in fact motivated by discrimination. <u>Moore</u>, 461 F.3d at 342. Plaintiff has not established a <u>prima</u> <u>facie</u> case of retaliation, as discussed above. Even if she had, we find that Defendant has put forth a legitimate, non-retaliatory reason for Plaintiff's termination.

Defendant claims that it was operating at a financial loss, requiring it to reduce expenses by laying off employees. At the October 12, 2011 reorganizational meeting, members of Defendant's management team determined that the company was overstaffed with surgical schedulers and that one scheduler would be laid off. These circumstances are reflected in Kelly's affidavit, the deposition testimony of Defendant's controller, April Geraci, and the

---

one of the three incidents. She had previously received a written disciplinary notice and was rated "below expectations" in a performance review, both prior to her conversation with Enriquez.

To claim retaliation, a Plaintiff must establish that his or her protected activity was the but-for cause of the adverse action. <u>University of Texas S.W. Medical Center v. Nassar</u>, 133 S. Ct. 2517, 2534 (2013). Notwithstanding Plaintiff's labelling the disciplinary notices "bogus," she points to no evidence that her complaint to Enriquez, rather than infractions for which they were issued, prompted them. Her argument is further weakened by the fact that one notice, as well as her negative review predate any purported protected activity. <u>See</u> <u>Verma v. Univeristy of Pennsylvania</u>, 533 F. App'x 115, 118 (3d Cir. 2013) (declining to infer a causal link where an employee's negative performance evaluations predated any protected activity). We find that no reasonable jury could draw a causal connection between Plaintiff's complaint to Enriquez and either her termination ten months later, or the sporadic disciplinary notices—also issued months after her complaint—for infractions that Plaintiff acknowledges committing.

minutes from the meeting and are not refuted by Plaintiff.  The participants elected to lay off Plaintiff, who Defendant claims was paid a high salary and was the only surgical scheduler with job performance problems.

Certainly, the need to lay off employees for financial reasons qualifies as a legitimate, non-discriminatory motive for an adverse employment action.  See, e.g., Trapani v. Greatwide Logistics Servs., LLC, 2011 WL 3803789, at *10 (E.D. Pa. Aug. 29, 2011).  Accordingly, Defendant has advanced a legitimate, non-retaliatory reason for terminating Plaintiff and the burden shifts to Plaintiff to point to "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes, 32 F.3d at 764 (citation omitted).  Although Plaintiff contends that the record contains significant evidence to suggest that Defendant's actions were pretextual, she was unable to point to sufficient evidence to substantiate this claim.

Plaintiff acknowledges that she committed at least three of the four infractions for which she was warned.  Nonetheless, Plaintiff claims that evidence of pretext exists in that Kelly investigated Plaintiff's complaint herself—despite lacking the necessary qualifications—in the belief that Enriquez and Hummer did not want anyone else to know about the incident.  Defendant responds that Plaintiff mischaracterizes Geraci's testimony regarding Kelly's qualifications and notes that Kelly did not investigate alone, but rather with the assistance of outside counsel.  Upon reviewing Geraci's testimony, it is clear that she did not claim to know whether Kelly was qualified to conduct the investigation.  While Geraci did testify that Kelly stated that she would conduct the investigation herself because "they didn't want anyone to

know" about the complaint, we need not decide whether this purported irregularity would normally give rise to an inference of pretext. Because the complaint and the investigation occurred after the decision to terminate Plaintiff, concerns about the propriety of the investigation simply do not support the proposition that the decision to terminate was retaliatory.

## V.     CONCLUSION

For the reasons stated above, we will grant Defendant's motion. An appropriate order follows.